Good morning. May it please the Court. Ben Zuffranieri from Hudson Rust on behalf of the Plaintiff Appellant Chateau Des Charmes. Canadian wine, eh? I'm from Buffalo, Your Honor. I'm sorry? I'm from Buffalo. I'm sorry. No, no. I mean, your client makes Canadian wine. Yes, sir. I didn't know there was wine made in Canada. Please go ahead. Thank you, Your Honor. This appeal raises several questions, two of which, if decided in appellant's favor, would be dispositive of the others. First question, was a forum selection clause included in the party's agreement? And second, what law will be applied to determine that issue? The basic facts of this case are not in dispute. And essentially, Your Honor, there were two telephone orders for a product known as an Altec cork. An Altec cork is a product which is made of some natural cork, which is pulverized or powderized, and then mixed with polymers. And a synthetic cork containing some natural product is then used for a wine closure. Counsel, let me interrupt you. Did you consider what the United Nations Convention on Contracts for the International Sale of Goods provides? Your Honor, the discussion before the district court concerned whether the forum selection clause would be part of a contract under Ontario law, and then secondly, would it be under a part of the contract under California law. We have an opinion. This is an international sale of goods, is it not? Yes, it is, Your Honor. And you didn't look at the convention? Your Honor, we have an opinion in the record from a barrister and a solicitor from Ontario who has given an opinion that the forum selection clause would not be part of the contract under Ontario law. Maybe that law doesn't govern. Well, Your Honor, and we obviously argued also to the district court that California law, if applied, or the Uniform Commercial Code, if applied, would not impose or impose. I know you've got that, but I'm not sure that that's the law that applies at all. Your Honor, that issue was never raised. The basic thrust of the motion below, and obviously we responded to the motion below, was that dismissal was warranted under 12b-3 of improper forum, and the argument was that federal law as to the enforceability and interpretation of the forum selection clause dictated a dismissal of the case. Well, counsel, if the parties have got the law wrong, are we supposed to follow along and say, well, you got the law wrong, but on this wrong law, we decide this way? Your Honor, no. It's our position, and obviously that convention that you identified perhaps, Your Honor, might have relevance, let's say, to the question of the breach of contract. But there were five other causes of action in the complaint, including a cause of action in strict liability and a cause of action for deceptive sales practices and false advertising. And respectfully, Your Honor, the California defendant that we have sued, Sabote USA, Your Honor, we believe would be subject certainly to a product liability claim, irrespective of the convention as it concerns the breach of contract claim, and also would be subject to a claim of false advertising and deceptive practices. The record made clear that these same defendants had engaged in the same sales practices, promoting this cork as a taint-free cork in California, and that there were claims by California wineries against these same defendants for that same conduct. And respectfully, Your Honor, if we got wrong, which body of law would govern the question of the express contract claim, I think that doesn't dispose of the other questions, Your Honor. And it would still require ---- It would deal with the Foreign Selection Clause. Well, Your Honor, I guess the ---- potentially, again, since that was not addressed and there was no claim that it was governed by that statute, you know, I can't speak for it. We in America are very interested in international conventions and agreements. Of course, Your Honor. Of course. What I can speak ---- We follow them every chance we get. Yes, Your Honor. I certainly understand that. And the district court didn't find or rely on the international convention in dismissing the case. And ---- Maybe it should have. But it didn't, Your Honor. And what the point that I'm making here is ---- Counsel, I think you're in the unfortunate position of not knowing whether the document helps you or hurts you, so you're sort of trying to talk your way around it. Maybe it's a goldmine for you. Maybe it's just a pleasure to help you out and see whether it's good for you or bad. I appreciate that, Your Honor. I can obviously only speak to the question ---- I mean, you don't know, right? Yeah, I can obviously only speak to the question of the basis ---- Maybe you want to jump on this thing. You don't want to say anything that, you know, you say, oh, boy, this is great. Well, the district court dismissed the claim on the basis of federal law, not on the basis of the convention.  And the district court found and held that whether or not a forum selection clause was included in the agreement was a matter of federal law. And specifically, the district court imported a course of dealing doctrine from the Second Circuit, which this court expressly declined to follow and noted ---- We follow the Third Circuit. That's correct, Your Honor. And your CFLC opinion ---- That's your case, isn't it? Yes, Your Honor. It certainly is. It comes down and throws every time for a bottle. Okay. Thank you, Your Honor. I mean, that is your case, isn't it? We don't follow the Second Circuit. We follow the Third Circuit. We said so expressly. The district court overlooked our opinion when we adopted the Third Circuit approach.  Yes, Your Honor. Thank you. I mean, you can keep talking, but ---- Okay. Thank you. Good morning. David Winton on behalf of Sabatier USA and Sabatier SA. May it please the Court. As the Court has already correctly noted, this is an international sales contract involving a Canadian winery and a French manufacturer and seller of goods. In this case, the Canadian winery purchased composite bottle closures from a French manufacturer and seeks to invoke the jurisdiction of this Court and the district court to resolve a dispute arising out of those transactions. The party's course of dealing consisted of approximately 12 invoices over the course of about 14 months. Is that what course of dealing means? Yes. Does it parse it that small into invoices, or does it relate to the manner in which the parties negotiated with each other? I think it involves the totality of those things, Your Honor. I think that if the negotiations are relevant to the inquiry, then that should be considered, as should the invoices and such other things as are important to the party's course of dealing. In the UCC section relied upon by appellant, UCC 2207, right behind that in UCC 2208, the commercial code talks about a series of identical transactions wherein a party performs pursuant to the same terms and conditions as before and those issues and those terms become relevant. What would happen if the first invoice had come in and somebody was smart enough to be able to read French and took one look at that in French and said, oh, my gosh, a forum selection clause, and said, wait a minute, you know, this is all over. That would have ended it right on the spot. There would have been no contract. It couldn't have been in the contract or part of the or an understanding that the parties were working with. But by allowing 2, 3, 4, 5, 6, 7, or 8 of those to go by, then it becomes a course of dealing? Actually, I don't believe that if there were only one invoice that was actually paid without objection. You know how common it is for people around here to speak French? It's as common as following international agreements, especially law French. I'm not kidding. It's very, very common. People from high school and everything. I understand, Your Honor. We have several French paralegals in our office. How do you say forum selection in French? The fact of the matter here is, Your Honor, that this is a Canadian winery called Chateau du Champ. The problem is we have a case by the name of CFLC that disapproved New Moon, the Second Circuit case, that the district court relied on. Follow the Third Circuit where the Third Circuit held specifically that one-sided invoices, sending somebody pieces of paper that they don't sign on to, is not good enough. So the district court applied the wrong law. And the law that it should have applied, which was our Ninth Circuit case following the Third Circuit, cuts out of the way. What do you do with that? CFLC, Your Honor, is an Article 9 case. 9203 of the UCC. 9203 of the UCC. Which it relied on. The Third Circuit case that it relied on. Yes. Is an Article 2 case. Sale of goods case. So it disapproves New Moon, which is the Second Circuit. It goes, follows a Third Circuit case that is an Article 2 case, applies it in the Article 9 context, but says we're going to go with the Third Circuit. What do you do with that? But the Article 9 context has a statute of frauds, Your Honor. There's no statute of frauds in this particular instance. I don't think you're listening to my question. I'm sorry? No, I am. Mr. Court followed a case from the Second Circuit, okay? Yes. Listen carefully. That we have disapproved. Dis-approved. Said no good. We don't follow it, right? Are we together? Yes. Okay. So Mr. Court followed a case that we have said is no good. Right there we have error of law. Moreover, in the case from our circuit, from our court, the district court overlooked, we approved a Third Circuit case, which was a sale of goods case. We said we follow the Third Circuit. The case of the name is Parvell, I believe. Okay. What do you do with that? Aren't we bound by earlier ruling, our court's earlier ruling in C-F-L-C, where we said we follow the Third Circuit in Parvell? How did we get around that? First of all, Your Honor, I don't believe that the course of dealing analysis is even required in a form selection clause case. There was no course of dealing in Carnot. Of course. They never agreed to form selection. There was not a mutual agreement. They had an oil contract according to the facts that both parties agree to, and then your client started sending a bunch of invoices with a bunch of law French written on them. Nobody ever sent back an invoice and saying, yes, I agree to everything on the invoice. That's correct, Your Honor. Isn't that exactly what Parvell said is not good enough? No, Your Honor. Talk about Parvell. Assume that Parvell is vining on us on the C-F-L-C. So why don't you tell me how you get out from under Parvell? I believe that Parvell, if I'm thinking of the correct case, Your Honor, is an arbitration clause. See, if I were you, I would have known this case well. Go ahead. Well, Parvell is an arbitration clause in a standard preprinted invoice case, Your Honor, and I believe that the court found that the ---- I'm sorry. I have been ---- I'm talking about Stepsaver. I am so ---- I have confused you because I confused myself. The third second case is Stepsaver. Parvell is the second second case. Parvell is the second second case. Sorry, I got my names confused. Well, but nevertheless, the third second case is Stepsaver and seems to be directly on point. I don't believe the course of dealing analysis is dispositive on the issue, Your Honor. I think it's probative, but I don't believe it's dispositive. But factually, I think the court needs to notice, to take note of the fact that this appellant, this plaintiff, pled these written invoices as part of its cause of action in paragraph 52, which appears on the excerpts of record on page 7. It says, Oral contract supported by the written invoices. Now, and then in two paragraphs later, they talk about these agreements in plural. I have no idea what you're saying. I'm sorry? I have no idea what you're saying. So are you arguing that they agreed that the agreement contained oral selection? I'm arguing that they have pled that the invoices form the basis for their agreement, that they're seeking recovery on right now. I don't think that there's any law that's been offered by any party here that says when you plead an invoice as supporting an oral agreement, you can pick and choose the terms in the invoice that you like and those that you don't like. I thought I understood that Canadian law said that it doesn't count unless it's actually bargained for when you add something like that to a document. I'm not convinced that Canadian law has any application here at all, Your Honor. Canadian law hold, though. Canadian law seems to suggest that a forum selection clause that's not bargained for is not part of the contract or the agreement in the first place. Well, Your Honor, this is a Canadian company and a French company. I don't know what they're doing in California. If Canada wouldn't enforce the forum selection clause, it seems to me they should be in Canada. Well, counsel, after all of you get through flapping around, the International Convention says that this applies to contracts of sale of goods between parties whose places of business are in different states. And by states, they mean different countries. Yes. And neither of you know what that convention requires, apparently. I'm not aware of any law, Your Honor, that says that the jurisdiction of the United States District Court is a function of what the United Nations has to say. We have adopted this. This is part of the body of United States federal law. The United States, France, and Canada are all signatories to that. Well, it wasn't raised in the ‑‑ I'm at the same disadvantage of opposing counsel here, Your Honor. I don't know what it says either. Oh, we might have a submission, and maybe both sides ought to look into it before we do something that's counter to what federal law is. Well, I think that in this particular case, the standard of review is abusive discretion, and it wasn't raised by the district court. Are you saying to me that we should apply the wrong law just because neither party or the district court came to the party? Absolutely not, Your Honor. I believe that Brayman is the right law. It's the U.S. Supreme Court, and it specifically discusses these situations. I think that forum selection is a matter of federal law and not a matter of the state law of Ontario or the ‑‑ What is the convention that we signed to say about that? I don't know, Your Honor. Frequently those things supplant or supersede local laws. But, Your Honor, I understand that that's true, but, again, we have two corporations, neither of which is a resident of the state of California. The wholly owned subsidiary had nothing to do with these transactions. I think the first question is what are we even doing in California? Now, if the federal courts have adopted a different standard, that very well may be, but the law of the case that was raised to the district court ‑‑ So you're making a forum nonconvenience argument here? No, Your Honor, absolutely not. What are you saying? What does it mean, what are we doing in California? I thought one of the parties here is the California corporation. It's a defendant, Your Honor, who had no connection with the transaction. And we're deciding choice of law, not forum nonconvenience. Are you sort of suddenly raising a forum nonconvenience argument? No, Your Honor, I'm not. So why are you asking the question, what are we doing? We are in California because you got sued in California, and you didn't see this vessel on forum nonconvenience grounds. That's what you're doing in California. I understand that, Your Honor. So why are you asking that question? Because the addition of a defendant that is a wholly owned subsidiary of one of the parties that had nothing to do with the transaction, I'm not sure is an adequate basis for coming to California in the first place. Well, but that's something you should have raised in the district court and gotten, just like in the prior case, tried to get a dismissal for forum nonconvenience or whatever. But that's not what you did. We're here on the assumption that you are in California. You didn't raise this objection below. So now the only thing we are having to decide is whether or not the choice of law decision was correct. Just assume you're in California. You're stuck for the time being. I understand that, Your Honor. But under Brayman, my obligation in the court below is to bring the motion that shifts the burden to the plaintiff to show that the forum selection clause under Brayman was either put in by fraud or overreaching or that its enforcement would be so unfair as to essentially deny the litigant his day in court. And neither of those showings has been made. And I believe that the district court correctly analyzed the situation whether Even though it overlooked both the international convention that's applicable and our controlling case on point that talks about the CLC case, adopting Stepsaver? But the appellant didn't raise it either, Your Honor. And I don't know that my obligation is to raise something that neither the court nor the appellant has raised. My obligation is to Wait a minute. You want us not only to ignore international agreements. You also want us to ignore prior decisions by our own court? No, Your Honor. That are directly applicable to the district court's actual ruling? No, Your Honor. If the district court entered a ruling and it turns out unbeknownst to it and perhaps unbeknownst to the parties, although maybe you knew about it and forgot to raise it, I don't know, there is a Ninth Circuit case directly on point that speaks I mean, it's directly on point and the district court ignored it. You think we can ignore it, too? Have you read that case? Which case is that, Your Honor? CLC. CFLC? CFLC and Stepsaver. Well, Stepsaver I'm not familiar with, Your Honor. And I should be. Is the Third Circuit case that we adopted in CFLC rejecting the Second Circuit's approach? Well, again, Your Honor, I don't believe that CFLC That the district court relied on. I don't believe that a course of dealing analysis is even required. Are you familiar with any of these cases? I'm familiar with CFLC and I'm familiar with Prevail. I'm not familiar with Stepsaver. Okay. What do you do about CFLC? The district court was not aware of CFLC, right? Or at least didn't cite it. No, it was raised. Okay. So how do you get around CFLC? Again, Your Honor, I think that the course of dealing analysis is not required under Brayman or Carnival Cruise Lines. I'm sorry. What kind of answer is that? I'm saying, how do you deal with one of our precedents? And you're saying it's not? I don't quite understand. I think the CFLC case, Your Honor, addresses an issue that does not need to be addressed by the court. I don't think the issue, of course, of dealing is required. How do you get the invoices in otherwise? You're relying on the invoices. Correct. They were not signed or, you know, they didn't sign one of those invoices and send it back and say, I agree. That's correct. The shooties didn't. So somehow you have to tag them with the language of the invoices. How do you get those in other than course of dealing? The shooties didn't sign the ticket in Carnival Cruise Line either, Your Honor. I don't believe that that. They bought the ticket. I understand that. What do you do with the language? Sharon bought the corpse and paid the invoices over 14 months. What do you do with the language in Carnival Cruise that says, second, we do not address the question whether respondents had sufficient notice of the forum clause before entering the contract for passage. Respondents essentially have conceded that they had notice of the forum selection provision. Isn't that manifestly different from what we're dealing with here, a forum selection clause in a forum language and the other side saying we didn't buy into that? First of all, Your Honor, French is not a foreign language in Canada. Second of all, in the Carnival Cruise Line case, I believe that the shooties conceded that they were aware of the forum selection clause. But in this particular case, notice no one's saying that they didn't know about it. They're saying they didn't agree to it, despite the fact that the forum selection clause was located right next to the amount due on the invoice in 12 invoices over the course of 14 months. There was never an objection, never a statement. Now, if the invoices are pled as part of the contract, as I understand it, what you have is you have a contract, an oral contract. The invoices were not part of that contract. They came later. The forum selection was not mentioned during that conversation that made up the oral contract. And so the question is not a question of knowledge. The question is that your agreement was complete at the time you had the telephone conversation. And can a party unilaterally add terms to the contract by sending a piece of paper that says, here is my view of what forum selection is? How do you augment the contract by unilateral submissions of that sort? Well, Your Honor, I think what's being suggested is that a party in this international sales transaction setting where purchase orders arrive by telephone and are confirmed by written invoice, which contains various information such as the warranty terms, the damage terms, the shipping terms, several other very important terms in the transaction, that the party later on when one of those terms turns out to be inconvenient can merely say, I didn't agree to those terms. It was all I did was call up and say, send me some corks, and I'll pay you. But now they're trying to plead around the invoicing. Let's say that's what's being suggested. Why don't you tell me why that's wrong? Why aren't these kinds of things required to be agreed ahead of time? And if you don't obtain agreement to your terms ahead of time, then too bad. Then you're going to be stuck with the default provisions of law and whatever they are. You're not going to be able to sort of buy your own law. What's so absurd about that? People send contracts and say, okay, now we've had an oral agreement. Here's my contract. Sign this and we'll do business. What's so absurd about that? If you send it by e-mail, you've got Web pages where you can click and agree to things. What's so difficult and absurd about this? Well, the Web pages where you click and agree to things usually require you to click a little box that says, I agree to the above. There are several cases where this result, the Eighth Circuit in the Nordheim v. International Controls, the form selection clause on the back of pre-printed invoices, enforced. In the Seventh Circuit, paper expressed for v. Von Kuchmenschen, the court noted that even a blind or illiterate person would be bound because they're charged with the knowledge of the agreement. Yes, if they agree. You're speaking to the wrong issue. The point is you have an agreement, and the question is can you then, by sending invoices and have additional terms, unilaterally modify the contract? That's what we're talking about. And that seems to be controlled by C.L.C. and Stepsaver. C.F.L.C. and Stepsaver. You may not like what they say, but that's what they seem to do. Your Honor, I think that what the Court is suggesting and what the appellant is suggesting is that prior to the enforcement of a form selection clause, there must be first a meeting of the minds. That's a meeting of the minds. That's what we're requiring contracts, a meeting of the minds. I understand that. Carnival Cruise Line specifically holds otherwise, and that's not one of the three analytical legs of the Brayman analysis. I suggest that both counsel look at Article 19 of the Convention. Okay. Thank you, Your Honor. Ron, may I have just 30 seconds on a quick point of rebuttal? Just the part of the reason that this course of dealing analysis was not well-developed below and the reason that the International Convention wasn't discussed or briefed by the parties below were raised is because the question of course of dealing was only for the first time mentioned in the motion in the reply papers. And an oral argument was canceled. An oral argument was canceled. I never had a chance to discuss the question of course of dealing or this Court's controlling precedent. And perhaps, Your Honor, I will point to that as a reason why we didn't discuss the International Convention about course of dealing. We never had a chance. Well, just go downstairs. We have a library here with lots of stuff in it. And who knows? While you're out there, you might decide to take a look at that. This is a good time to settle the case, eh? KHSI, you will stand submitted.
judges: B. Fletcher, Kozinski, Trott